UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLAUDIO MARCELO ROCANO
BUESTAN,

                        Petitioner,

          -against-

BRIAN McSHANE, in his official capacity as
Acting Field Office Director of New York,
Immigration and Customs Enforcement;
KRISTI NOEM, in her official capacity as
Secretary, Department of Homeland Security;
PAM BONDI, in her official capacity as
Attorney General of the United States,

                        Respondents.

25-CV-8544 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

On October 15, 2025, Claudio Marcelo Rocano Buestan filed a Petition for Writ of
Habeas Corpus challenging the lawfulness of his detention by Immigration and Customs
Enforcement and seeking, *inter alia*, his immediate release from custody. He alleges that, three
days earlier, ICE agents searching for somebody else stopped and surrounded his vehicle, then
detained him in violation of his Fifth Amendment rights. For the reasons stated herein, his
Petition is GRANTED.

## BACKGROUND

Claudio Marcelo Rocano Buestan ("Rocano Buestan" or "Petitioner") is a citizen of
Ecuador who has lived in the United States for approximately 15 years. ECF No. 1 ("Pet.") ¶ 1;
ECF No. 8, Declaration of Deportation Officer Michael V. Charles ("Charles Decl.") ¶ 6. He
lives near Newburgh, New York, with his longtime partner and his two children, a nine-year-old
and a three-year-old who are both United States citizens. ECF No. 5 ("Mot.") at 1–2. He
provides for his family by running a small carpentry and renovation business, *id.* at 3–4, and is

known to his neighbors as "a family man," "an honest, hardworking individual," and "the kind of person you would want in your community," ECF No. 5-7 at 2, 6, 8. In 2019, he was convicted for driving while intoxicated and received a one-year conditional discharge. Mot. at 3 (citing ECF No. 5-9).

On October 12, 2025, Rocano Buestan was detained by the United States Government. Pet. ¶ 2. That day, he was driving around Newburgh with his partner when masked Immigration and Customs Enforcement ("ICE") officers surrounded them in unmarked vehicles. Mot. at 1; ECF No. 5-10 at 3. The officers were "attempting to locate another [noncitizen]." ECF No. 9 ("Opp.") at 2 (citing Charles Decl. ¶ 5). Still, they ordered Rocano Buestan out of his car, questioned him, asked for "his papers," and—after he provided a driver's license but did not furnish proof of lawful residency—arrested him. Pet. ¶ 34; ECF No. 5-10 at 3; Mot. at 1; Transcript of Oral Argument ("Tr.") at 9:21–24. They took him to an ICE facility in Newburgh, where they advised him of his administrative rights in removal proceedings and he acknowledged that he understood those rights. Opp. at 2 (citing Charles Decl. ¶ 6).

According to Respondents' briefing, Rocano Buestan admitted under questioning that he had "illegally entered the United States . . . through the United States/Mexico border" and did not possess "the necessary legal documents to enter, pass through, or to remain in the United States." Charles Decl. ¶ 6. ICE agents then served Rocano Buestan with a Notice to Appear, the first step in starting removal proceedings against him, and charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled, and 8 U.S.C. § 1182(a)(7)(A)(i)(I) as a noncitizen without valid immigration documentation at the time of application for admission. Opp. at 3; *see* ECF No. 7-1 ("NTA"). Rocano Buestan refused to sign the Notice. NTA at 3.

ICE officers then moved Rocano Buestan to the Orange County Correctional Facility. Pet. ¶ 35; Opp. at 3. On October 15, 2025, he filed a Petition for Writ of Habeas Corpus ("Petition") seeking, *inter alia*, his immediate release from detention. Pet. Two days later, the Court issued an order restraining Respondents and their agents from transferring Petitioner out of this District and the United States, and set a briefing schedule on the Petition and any subsequent bail application. ECF No. 3. On November 10, 2025, Petitioner filed a separate bail application. ECF No. 5. That same day, the Government requested an extension to reply to both the bail application and the Petition simultaneously, and Petitioner consented to the request. ECF No. 6. On November 17, 2025, the Government timely filed their opposition. ECF Nos. 7, 8, 9. Two days later, the Court scheduled oral argument for December 2, 2025. ECF No. 10. And on November 24, 2025, Petitioner filed his consolidated reply, which addressed the Government's opposition to both his bail application and Petition. ECF No. 11 ("Reply").

All the while, Rocano Buestan's immigration case continued. On October 23, 2025, Rocano Buestan appeared remotely for a hearing before an immigration judge ("IJ") at the Varick Street Immigration Court in downtown New York. Opp. at 3. Through counsel and a Spanish interpreter, Rocano Buestan requested to make a bond argument, but the immigration judge adjourned the matter so that Petitioner could make a formal bond motion at a later hearing. *Id.* On November 7, 2025, Rocano Buestan, with counsel, made such a motion. *Id.* The immigration judge denied his request for bond. *Id.* The IJ found that the immigration court lacked jurisdiction because Rocano Buestan was detained subject to 8 U.S.C. § 1225(b)(2)(A), which mandates detention under certain circumstances. *Id.*

Rocano Buestan remained in ICE detention until the Court ordered his release at a hearing on December 2, 2025, for the reasons stated below.[1] *See* ECF No. 12.

## DISCUSSION

Rocano Buestan's Petition raises three issues. First, the Court must decide which provision of the Immigration and Nationality Act ("INA") properly governed his detention: the provision codified at 8 U.S.C. § 1225(b)(2)(A) ("Section 1225(b)"), which mandates detention for certain noncitizens "seeking admission" to the United States, or the provision codified at 8 U.S.C. § 1226(a) ("Section 1226(a)"), which "provides for discretionary authority to detain other noncitizens who are 'already in the country,'" *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 483 (S.D.N.Y. 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018)). Next, should the Court find that Rocano Buestan was detained pursuant to Section 1226(a), it must evaluate whether that detention violated the Constitutional protections afforded to him by the Due Process Clause of the Fifth Amendment. Finally, if the Court finds that Rocano Buestan's detention violated due process, it must decide what remedy he is due: a bond hearing before an immigration judge or his immediate release from detention.

Because the Court finds that Rocano Buestan was detained pursuant to Section 1226(a) and that his detention violated due process, and that the appropriate remedy for such a violation is his immediate release from detention, the Court GRANTS his Petition for Writ of Habeas Corpus.

---

[1] The Court originally scheduled the December 2 conference to hear oral argument on Petitioner's bail application. ECF No. 10. However, by the date of the conference, the parties had fully briefed both the merits of the Petition and the bail application. Accordingly, the Court concluded that it could decide the matter on the merits.

## I.        Petitioner Was Detained Pursuant to Section 1226(a)

The threshold question in this case, as it has been in many other cases that have recently come before the federal courts, is whether Petitioner was detained pursuant Section 1225(b), which would mandate his detention, or Section 1226(a), which would not. Respondents argue that because Petitioner is undocumented, he is an "applicant for admission" subject to the mandatory detention demanded by Section 1225(b). Opp. at 8–9. Petitioner contends, by contrast, that Section 1226(a) applies because Rocano Buestan "had been living in the United States for roughly fifteen years at the time of his detention"—in other words, that Section 1226(a) applies because he was "already in the country." Reply at 1–2; *Jennings v. Rodriguez*, 583 U.S. at 289.

As the Supreme Court has made clear, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)," while it "also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. at 289 (emphasis added). Countless other courts in this Circuit have recently and thoroughly detailed the distinctions between these two statutory provisions—and have uniformly rejected the argument that noncitizens already physically present in the country are still "seeking admission" and are thus subject to the strictures of Section 1225(b). *See, e.g.*, *Huang v. Almodovar*, No. 25-CV-9346 (DEH), 2025 WL 3295912 (S.D.N.Y. Nov. 26, 2025); *Romero v. Francis*, No. 25-CV-8112 (JGK), 2025 WL 3110459 (S.D.N.Y. Nov. 6, 2025); *Gonzalez v. Joyce*, No. 25-CV-8250 (AT), 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025); *Samb v. Joyce*, No. 25-CV-6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025); *Rodriguez-Acurio v. Almodovar*, No. 25-CV-6065 (NJC), 2025

WL 3314420 (E.D.N.Y. Nov. 28, 2025); *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL

2829511 (E.D.N.Y. Oct. 6, 2025); *J.U. v. Maldonado*, No. 25-CV-4836 (OEM), 2025 WL

2772765 (E.D.N.Y. Sept. 29, 2025).

  One court in this District even undertook a comprehensive study of this issue across the

country and found that Respondents' argument—the product of the current "administration's new

position that *all* noncitizens who came into the United States illegally, but since have been living

in the United States, *must be detained* until their removal proceedings are completed"— "has

been challenged in at least 362 cases in federal district courts." *Barco Mercado v. Francis*, No.

25-CV-6582 (LAK), at 9–10 (S.D.N.Y. Nov. 26, 2025) (citing appendices listing the cases). The

court found that the "challengers have prevailed, either on a preliminary or final basis, in 350 of

those cases decided by over 160 different judges sitting in about fifty different courts spread

across the United States." *Id.* at 9–10. In other words, as that court and others have reiterated as

recently as last week, "the law still means what it always has meant." *Id.* at 10; *Rodriguez-*

*Acurio*, 2025 WL 3314420, at *23 (quoting *Barco Mercado*, No. 25-CV-6582 (LAK), at 10).

  This Court need not belabor the point further. The facts in this case are virtually

indistinguishable from those cases courts in this Circuit and across the country have already

considered. Rocano Buestan has lived in the United States for some 15 years. Reply at 1. He is

embedded in his community. Mot. at 2–3. He has built a life with his family and is quite literally

building a home here. *Id.* He runs a business. *Id.* at 3–4; Reply at 8. He is lauded by his

neighbors. ECF No. 5-7. And he is loved by many people in this country, including his two

children who are American citizens. Mot. at 4; Reply at 8. Rocano Buestan is not "seeking

admission" to the United States; he has long been a part of its fabric.

Respondents' attempts to argue otherwise are unconvincing. *See* Opp. They recycle arguments that the vast majority, if not all, courts in this Circuit have systematically rejected. *See, e.g.*, Opp. at 7–8; *Rodriguez-Acurio*, 2025 WL 3314420, at *24 (finding "unpersuasive" the same "catchall" argument Respondents advance and highlighting that other judges in this Circuit have held the same). They point to only three out-of-Circuit cases that support their position. *See* Opp. at 9 n.3 (citing *Vargas Lopez v. Trump*, No. 25-CV-526, 2025 WL 2780351 (BCB), at *9 (D. Neb. Sept. 30, 2025); *Mejia Olalde v. Noem*, No. 25-CV-168 (JMD), 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); *Chavez v. Noem*, No. 25-CV-02325 (CAB) (SBC), 2025 WL 2730228, at *5 (S.D. Cal. Sept. 24, 2025)). But the vast majority of the cases, and those in this Circuit, have concluded otherwise. At the December 2 hearing, when given a chance to defend their position, the Government merely offered that the many cases in this Circuit that have already dispensed with their arguments were simply "wrongly decided." Tr. at 5:11–20.

That is plainly insufficient. Accordingly, this Court joins the growing chorus of courts in the "overwhelming, lopsided majority" to find that Petitioner's detention was governed by Section 1226(a). *Rodriguez-Acurio*, 2025 WL 3314420, at *23 (quoting *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), at 10). Rocano Buestan should not have been subject to mandatory detention.

## II.    Petitioner's Detention Violated Due Process

Next, the Court assesses whether Petitioner's detention violated due process. The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. There is no question that these protections apply to citizens and noncitizens alike. *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("[T]he Fifth Amendment entitles noncitizens to due process of

7

law . . . whether their presence here is lawful, unlawful, temporary, or permanent." (internal citations omitted)).

"In the Second Circuit, the '*Mathews v. Eldridge*, 424 U.S. 319 (1976), balancing test applies when determining the adequacy of process in the context of civil immigration confinement." *Lopez Benitez*, 795 F. Supp. 3d at 492 (citing *Chipantiza-Sisalema v. Francis*, No. 25-CV-5528 (AT), 2025 WL 1927931, at *2 (S.D.N.Y. July 13, 2025)) (cleaned up). "The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* (cleaned up). Applying this balancing test to Rocano Buestan's case, it is clear that his detention violated due process.

### 1. Private Interest

The parties do not dispute that Petitioner has an interest in being free from physical detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Respondents acknowledged as much at the December 2 hearing. Tr. at 12:18–22.

"A person's liberty cannot be abridged without 'adequate procedural protections.'" *J.U. v. Maldonado*, 2025 WL 2772765, at *9 (quoting *Zadvydas*, 533 U.S. at 690). Yet Rocano Buestan received none. "The undisputed facts" are clear: "ICE summarily detained [him] pursuant to its policy of arbitrary detention without affording him notice or opportunity to be heard." *Gonzalez v. Joyce*, 2025 WL 2961626, at *3. He was clearly "entitled to more process than he received."

*Lopez Benitez*, 795 F. Supp. 3d at 495 (quoting *Valdez v. Joyce*, No. 25-CV-4627 (GBD), 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025)). Therefore, his "liberty interest is clearly established." *J.U. v. Maldonado*, 2025 WL 2772765, at *9 (citing *Valdez*, 2025 WL 1707737, at *3).

### 2. Risk of Erroneous Deprivation

Next, "the record unequivocally demonstrates" the equally heightened risk of erroneous deprivation. *J.U. v. Maldonado*, 2025 WL 2772765, at *10. "Respondent[s] concede[] . . . that no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner." *Id.* In fact, Respondents explain that the ICE agents who ultimately detained Rocano Buestan "encountered" him because they were looking for somebody else entirely. Charles Decl. ¶ 5; Tr. at 3:14–16. Worse, after Rocano Buestan provided a driver's license that confirmed that he was not the person the agents were searching for, they detained him anyway. Tr. at 9:21–10:4. They did not know his immigration status at the time. *Id.*; *Id.* at 3:10–4:8. Respondents have still not provided any reasoning to explain why the ICE agents initially detained him. *See* Tr. at 3:10–4:24. Petitioner provides an explanation: he was "brazenly profiled." Reply at 3.

Once detained, there was likewise "no evidence of 'an individualized assessment as to [Rocano Buestan's] dangerousness or flight risk, or any kind of process at all sufficient to qualify as a valid exercise of discretion. Indeed, there is no evidence of any exercise of discretion at all." *Samb*, 2025 WL 2398831, at *3 (internal citations omitted). Quite to the contrary, the record is replete with reasons why Rocano Buestan is neither a flight risk nor a danger to the community, including his lack of any meaningful criminal history; his work on ongoing construction projects, including work on a job worth "well over one million dollars," Mot. at 3 (quoting ECF No. 5-1 ¶ 4); his health concerns, Mot. at 4; and his family, including caring for his two young children,

*id.* "Thus, the risk of erroneous deprivation of Petitioner's liberty interest is high." *J.U. v. Maldonado*, 2025 WL 2772765, at *10.

### 3. Government Interest

Finally, the Court analyzes the Government's interest in Petitioner's continued detention. Although Respondents did not brief this issue, they provided two interests for the Court to credit during oral argument. Tr. at 12:23–13:15. First, they maintained that because detention is discretionary under Section 1226(a), the Government has an interest in exercising that discretion. *Id.* at 13:4–6. Second, they argued that the Government has an interest in working through the immigration process, not resolving the issue in federal court. *Id.* at 13:6–21. Both positions are without merit.

To start, the Government's interest in its discretion *per se* cannot support Petitioner's sustained detention when the Government failed to exercise that discretion in the first instance. The "discretionary authority in § 1226(a) requires an individualized bond determination before a noncitizen may be taken into custody." *Hyppolite*, 2025 WL 2829511, at *8 (citing *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)). But, as explained above, the Government did not exercise any individualized discretion in detaining Petitioner or in denying him the opportunity to challenge his detention in immigration court. Thus, Respondents' reasoning—that the Government should be able to exercise its discretion by keeping Rocano Buestan detained in order to protect its discretion to keep Rocano Buestan detained—is unconvincing at best.

Respondents' next argument—that the Government has an interest in foregoing Petitioner's right to seek habeas relief in the federal courts—is even more troubling. "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); *see also Ozturk v. Hyde*, 136 F.4th 382, 393 (2d

Cir. 2025) (quoting Paul D. Halliday, Habeas Corpus: From England to Empire 161 (2012 edition)) ("By exploring hundreds of cases across many decades, we can gain a sense of practices and principles, if not rules, that constituted a jurisprudence of normalcy. At the center of this jurisprudence stood the idea that the court might inspect imprisonment orders made at any time, anywhere, by any authority."). The Court does not, therefore, entertain the notion that there is a worthwhile interest in denying Petitioner his right to seek redress in the federal courts for deprivations of his liberty interests. "Thus, the third *Mathews* factor weighs strongly toward [Rocano Buestan]." *Hyppolite*, 2025 WL 2829511, at *15.

"Given the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to show a significant interest in his detention," the Court concludes that Rocano Buestan's detention violated the Due Process Clause of the Fifth Amendment. *Lopez Benitez*, 795 F. Supp. 3d at 496 (cleaned up).

### III. The Appropriate Remedy Is Immediate Release from Detention

The Court must therefore decide what remedy is appropriate. Petitioner argues that he should be immediately released from detention. Reply at 3. Respondents contend that the Court should order a bond hearing before an Immigration Judge. Opp. at 17–21. Numerous courts in this Circuit and across the country have also weighed in on this question. *See Huang v. Almodovar*, 2025 WL 3295912, at *3 n.6 (S.D.N.Y. Nov. 26, 2025) (collecting cases). Many have "ordered [the] immediate release of similarly-situated petitioners, rather than a bond hearing." *Id.* This Court does the same.

As one court in this Circuit explained just last week, "a bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue here. [Rocano Buestan's] detention was unlawful from its inception because ICE detained [him] under

the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a)." *Rodriguez-Acurio*, 2025 WL 3314420, at *31. To "dispose of the matter as law and justice require," 28 U.S.C. § 2243, "necessitates [Rocano Buestan's] release from detention and relief guarding against [his] re-detention in violation of this Court's determinations that [he] is not subject to mandatory detention under Section 1225(b)." *Rodriguez-Acurio*, 2025 WL 3314420, at *32.

Especially "given the nature of the constitutional violation [Rocano Buestan] sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment *before* detaining him—any post-deprivation review by an immigration judge would be inadequate." *Lopez Benitez*, 795 F. Supp. 3d at 497. "Such a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Id.* (quoting *Chipantiza-Sisalema*, 2025 WL 1927931, at *3) (cleaned up).

In short, "ICE caused [Rocano Buestan] to be placed in custody in violation of [his] rights to procedural due process. The proper remedy for that unlawful detention is release." *Rodriguez-Acurio*, 2025 WL 3314420, at *32 (citing *Munaf v. Green*, 553 U.S. 674, 693 (2008); *Barco Mercado*, No. 25-CV-6582 (LAK), at 33; *Lopez Benitez*, 795 F. Supp. 3d at 496–97; *Tumba Huamani v. Francis*, No. 25-CV-8110 (LJL), 2025 WL 3079014, at *9 (S.D.N.Y. Nov. 4, 2025)).

Accordingly, on December 2, 2025, the Court issued an oral order directing Respondents to immediately release Rocano Buestan.

**CONCLUSION**

For the reasons stated above, the Court GRANTED Rocano Buestan's Petition for Writ of Habeas Corpus on December 2, 2025. Tr. at 14:3–11; ECF No. 12. The Court also directed Respondents to file a letter on the docket no later than December 3, 2025, at 5:00 p.m., certifying that they had released Rocano Buestan. ECF No. 12. Respondents timely did so: Rocano Buestan was released from detention on December 2, 2025. ECF No. 13.

In an Order that immediately followed the December 2 hearing, the Court reiterated that, "as Respondents stated on the record . . . the Government shall not re-detain Petitioner pursuant to 8 U.S.C. § 1225(b)(2), absent a change in relevant circumstances." ECF No. 12. The Court now adds, consistent with this Order, that Respondents are further enjoined from denying Petitioner bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances.

The Clerk of Court is respectfully directed to close this case.


Dated:  December 5, 2025
        New York, New York

                                        SO ORDERED.

                                        _Jessica Clarke_
                                        _____
                                        JESSICA G. L. CLARKE
                                        United States District Judge